**ECONOMY FUSE & MFG. CO. v. RAY-
MOND CONCRETE PILE CO.**

No. 7114.

Circuit Court of Appeals, Seventh Circuit.

May 6, 1940.

William A. Morrow, Walter M. Fowler, and Gardner, Foote, Morrow & Merrick, all of Chicago, Ill. (Robert L. Elliott, Jr., of Chicago, Ill., of counsel), for appellant.

Edward R. Adams, Herbert C. De Young, Amos C. Miller, Robert W. Wales, and William Simon, all of Chicago, Ill., for appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Plaintiff appeals from a judgment based upon a ruling overruling plaintiff's demurrer to defendant's plea of the Statute of Limitations to each count of the declaration. The pleadings, filed when common law procedure was the rule in Illinois, were, as provided by the Conformity Act, 28 U.S.C.A. § 724, in accord with that practice.

The declaration contained seven counts, paragraphs 1 to 5, inclusive, of each of which are identical and include substantially the averments following. Plaintiff, having decided to erect a building for the housing of its office, machinery and equipment, feared it might be difficult to obtain proper support for the foundation and deemed it advisable to avail itself of expert advice and skill in order that it might surely obtain the desired adequate support. Defendant had, for a long time, been engaged in the business of manufacturing and installing concrete piles for supports for foundations, holding itself out to the public as possessing expert knowledge, skill and experience in such work and as constantly furnishing to its clientele material and workmanship suited to the purpose for which it might be intended.

Plaintiff informed defendant of the character of the proposed building, of the use for which it was intended, of the neces-

sity of excavation and refilling and of the desire to have installed piles that would furnish adequate and proper support. Thereafter defendant submitted a proposal in writing to manufacture and install the piles. Confiding in and relying upon this offer and the knowledge and experience of defendant, plaintiff accepted in writing the proposal, which thereupon became a written contract.

Under this agreement, defendant proposed to furnish "all tools, material and labor for, and install" concrete piles for the "foundation of the proposed building." The writing expressly provided that the concrete should be composed of "one part good Portland Cement; three parts sharp sand and five parts crushed stone or gravel of suitable size, which shall be carefully mixed and placed in the shells." No additional specifications were prescribed except that the piles were to· be of certain dimension and length. The work was to be "pushed to completion as speedily as is consistent with good workmanship."

Defendant entered upon the performance of the contract and made, placed and installed 255 piles. Plaintiff relied upon the performance of the work as of such character as to furnish adequate support, paid for it according to the prices stipulated, proceeded to erect the building at a cost of $425,000, and placed therein its equipment and machinery.

The sixth and last paragraph of each count states wherein it is claimed defendant broke its contract and sets forth the damages alleged to have resulted. Thus, in count 1, it is averred that by virtue of the contract, defendant agreed and warranted that it would furnish "sufficient and adequate support for the foundation and building proposed to be erected"; that the piles built were insufficient and inadequate for such purpose and that, as a result, the building sank and settled to the damage of plaintiff.

In count (2) the comparable averment is that by the contract defendant agreed and warranted to plaintiff that the piles "would be reasonably fit and suitable to sustain and support the foundation and building"; that the piles built were unsuitable, unfit and insufficient for the purpose contemplated, whereby plaintiff was greatly damaged.

In count 3 it is averred that by the contract defendant agreed that "it would manufacture, place and install in the ground * * *, for the purposes aforesaid, the piles, in a good and workmanlike manner and would use reasonable skill and care in the manufacture" and installation and warranted. that it had "fulfilled its undertaking in that behalf"; that defendant failed to use reasonable skill but manufactured and installed the piles in an unworkmanlike, unskilled manner.

In count 4 the charge is that defendant undertook and agreed that the material would be composed of one part good Portland cement, three parts sharp sand and five parts crushed stone and gravel of suitable size, and that it would be carefully mixed and placed in the shells; and that it utilized improperly mixed materials to the damage of plaintiff.

Count 5 is similar in its averments as to the duties of defendant, charging the use of inferior sand.

Count 6 charges that defendant was bound to mix carefully and place materials in the shells; that it improperly and carelessly mixed and placed the materials in such manner that the piles provided inadequate, insufficient support.

Count 7 avers that defendant by its contract warranted that the piles would have and retain normal and reasonable strength in sustaining power in proportion to the size of such piles when manufactured and installed in a good and workmanlike manner and of the materials specified; that defendant furnished piles that were weak, soft, defective and of less than the normal and reasonable strength of piles of such size and character, so that they were inadequate, insufficient and unfit to sustain the foundation and building.

To this declaration and each count thereof defendant filed a plea of the general issue and a special plea of the Statute of Limitations, in the latter of which it averred that the cause of action set forth in each count had not accrued to plaintiff within five years before commencement of the suit. Demurrer to this plea was overruled.

Thus the question at sharp issue between the parties is whether the causes of action pleaded in the various counts were within the Statute of Limitations of Illinois gov-

erning written contracts, wherein the limitation is ten years, or by that governing unwritten contracts, wherein the limitation is five years. Illinois Revised Statutes 1939, chap. 83, Sections 16, 17. Plaintiff contends that all upon which it relies to constitute each cause of action as outlined in each count is expressed in the contract or implied as a matter of law therefrom, whereas defendant's position is that none of plaintiff's causes of action grows out of the contract; that, as pleaded, each rests partly in parol and partly in writing and is, therefore, barred by the five-year Statute of Limitations as an action upon an unwritten contract.

The special plea is one of confession and avoidance. Fish v. Farwell, 160 Ill. 236, 43 N.E. 367; Wiley & Drake v. National Wall Paper Co., 70 Ill.App. 543. Consequently the sufficiency of plaintiff's declaration was not questioned by the plea and we are concerned only with the question of whether the causes of action thus admitted are based upon a written contract or upon an unwritten one.

It is not the law of Illinois that a cause of action upon a written contract is taken out of that class by reliance upon evidence of surrounding circumstances. On the contrary in this jurisdiction it is recognized that in determining whether the written provision of a contract imports a warranty implied by law the court may and must admit such evidence of the surrounding circumstances as will aid the court in arriving at the true meaning of the parties. The proposition in no way violates the parol evidence rule and in nowise militates against characterization of the cause of action as one arising upon a written contract. MacAndrews & Forbes Co. v. Mechanical Mfg. Co., 367 Ill. 288, 11 N.E.2d 382; Druecker v. McLaughlin, 235 Ill. 367, 85 N.E. 647; Geithman v. Eichler, 265 Ill. 579, 107 N.E. 180. Consequently the pleading of extraneous facts by plaintiff, that is, the knowledge of defendant of the purpose for which the work was to be done, did not alter plaintiff's action upon the contract in such way as to place it in a category resting upon a contract partly written and partly oral, for, in determining what the contract itself contemplates, the court, under the Illinois decisions, must give heed to what was before the parties in the way of surrounding circumstances at the time of the execution of the contract.

However, further question arises as to the extent to which the court is justified in including implications of warranties as a part of the writing where the express wording requires an inference by the court as to the intention. That inferred intention, necessarily implied from the express provisions, is just as much a part of the contract as the clearly expressed undertakings. Grimley v. Davidson, 133 Ill. 116, 24 N.E. 439. In so far as the Statute of Limitations is concerned, it is just as much a part of the written contract as that which is expressly stated. Consequently its inclusion results in nothing resting in parol, making the five-year statute applicable. Hart v. Otis, 41 Ill.App. 431; Thomas v. International Bank, 46 Ill.App. 461.

And the courts must read into every written contract the law governing the parties at the time the contract is made; that, too, necessarily enters into and forms a part of every contract as if fully and expressly incorporated therein. Illinois Bankers Life Ass'n v. Collins, 341 Ill. 548, 173 N.E. 465; Northern Pac. Ry. v. Wall, 241 U.S. 87, 36 S.Ct. 493, 60 L.Ed. 905. Consequently it was a part of this contract incorporated therein as fully as if expressly stated that defendant would do its work with reasonably good materials in a reasonably workmanlike manner, and in such a way as reasonably to meet such requirements as it had notice the work was required to meet. "All persons impliedly undertake, when they engage to do work, that they have a reasonable amount of skill in the employment, and that they will use it, and also engage for a reasonable amount of care, and a failure in these respects prevents them from recovering the contract price. * * * the employer may recoup all the damage he may sustain for want of reasonable skill, or for the want of or the observance of reasonable care in executing the work." Parker v. Platt, 74 Ill. 430. "A mechanic or other workman, undertaking to construct a piece of work, impliedly warrants that it shall be so constructed that it will be reasonably sufficient for the purposes for which it is intended * * *. It is one of the plainest principles of the law, that there is an implied warranty or undertaking in all cases, that the person so acting is reason-

ably skillful in his profession, trade or calling. And that he will perform his engagements in his calling with that degree of skill. The law implies in all contracts, in the absence of an express agreement to the contrary, that materials agreed to be furnished shall be suitable for the purpose, and that labor shall be performed with reasonable skill." Springdale Cemetery Ass'n. v. Smith and Pierce, 1863, 32 Ill. 252; Union Hide & Leather Co. v. Reissig, 1868, 48 Ill. 75; McKeown v. Dyniewicz, 1898, 83 Ill.App. 509; American Spiral Pipe Works v. Universal Oil Products Co., 1920, 220 Ill.App. 383; Beers v. Williams, 16 Ill. 69; Williston on Contracts, Revised Edition, Sec. 1014; 17 Corpus Juris Secundum, Contracts, § 329; William Beadenkopf Co. v. Henwood & Nowak, 14 F.2d 125, D. C. Mass.

■ Nor do the courts of this jurisdiction find any inconsistency in their conclusion that neither proof of the surrounding circumstances disclosing the purposes of the work nor the implied undertakings arising therefrom or from the contract remove the cause of action arising therefrom from the class governed by the ten-year Statute of Limitations to that controlled by the five-year statute. Thus, in Hartzell v. Cincinnati, H. & D. B. R. Co. 218 Ill.App. 553, suit was brought on a contract in writing. The Act of Congress known as the Carmack Amendment, 49 U.S.C.A. § 20 (11, 12), was necessarily by implication a part of the bill of lading and defendant insisted that the cause of action, therefore, was upon an implied agreement. The court held that the amendment constituted a part of the written contract, which, it said, was governed by the ten-year Statute of Limitations. Similarly, in Coats v. C., R. I. & P. Ry., 134 Ill.App. 217, the court held that the common law obligation of the railway company to transport the property safely would be read into the written-agreement and that the ten-year statute governed the cause of action. To the same effect are Hart v. Otis, 41 Ill.App. 431; Thomas v. International Bank, 46 Ill.App. 461; Pennsylvania R. R. Co. v. Cunningham, 224 Ill. App. 584; New York Central R. R. v. Mutual Orange Distributors, 9 Cir., 251 F. 230; Bancroft v. San Francisco Tool Co., 5 Cal. Unrep. 586, 47 P. 684; John A. Roebling's Sons v. Southern Power, 145 Ga. 761, 89 S.E. 1075; Houston v. Lawhead, 116 W.Va. 652, 182 S.E. 780; Home Insurance Co. v. Mercantile Trust Co., 219 Mo.App. 645, 284 S.W. 834; McGill v. Cockrell, 88 Fla. 54, 101 So. 199.

■ We conclude, therefore, that plaintiff's pleadings of the surrounding circumstances did not alter the character of the cause of action to one upon an unwritten contract; that its pleading of implied warranties arising both from the provisions of the written contract and from the pleaded facts of the surrounding circumstances did not convert the cause of action into one upon an unwritten contract and that the court erroneously overruled the demurrer.

■ Furthermore counts (4), (5) and (6) of the declaration are based upon the express provisions of the contract and are, therefore, governed by the ten-year statute.

The conclusions to which we find ourselves impelled are not in conflict with the authorities relied upon by defendant. In each of those citations, parol evidence was necessary to show existence of a contractual relationship between the parties. Such is not the case here. In Mowatt v. City of Chicago, 292 Ill. 578, 127 N.E. 176, there was no contract between the parties. There was a city ordinance, but it did not purport upon its face to be a contract. Parol evidence was necessary to show the existence of a contractual relationship between the parties. In Knight et al. v. St. Louis, Iron Mountain & Southern Railway, 141 Ill. 110, 30 N.E. 543, plaintiffs had no right to sue upon the contract upon which they relied. In other words, there was no written evidence of a contract between the parties. Likewise, in Railway Passenger & Freight Conductors' Mutual Aid & Benefit Ass'n v. Loomis, 142 Ill. 560, 32 N.E. 424, the written instrument relied on disclosed no cause of action in plaintiff. The early case of Illinois Central Railroad Co. v. Miller, 32 Ill.App. 259, if deemed contrary to our conclusion, is outweighed by the subsequent decisions hereinbefore mentioned.

■ Defendant also insists that there can be no implied warranty of reasonably good workmanship, because it was called upon to manufacture according to specific specifications, in other words, that the precise provisions of the contract negatived any implied warranties. Admittedly,

where a written specification governs, defendant's performance in furnishing a completed article in full accord with the specification, is complete performance; there is no implied warranty that he will do anything other than furnish the specified article. But in the case at bar, the only specification as to piles is as to their length and maximum resistance when placed in the ground. The specification as to material and the matter of mixing is the basis for the cause of action set forth in counts 4, 5 and 6. But we find nothing in the contract that negatives the obligation of defendant, under the law, to perform its work in a workmanlike manner and to complete construction reasonably fitted to accomplish what defendant had notice it was expected to accomplish. On the contrary, the written agreement expressly provides for completion "as speedily as is consistent with good workmanship".

Inasmuch as the court should have sustained plaintiff's demurrer, the judgment is reversed with directions so to do and to proceed in accord with this opinion.