GENTILE BROTHERS COMPANY, a Corporation, *Plaintiff in Error*, v. ATLANTIC COAST LINE RAILROAD COMPANY, a Corporation, *Defendant in Error*.

Division B.

Opinion filed July 13, 1928.

*E. W. and R. C. Davis,* for the Plaintiff in Error;

*W. B. Crawford and Alexander Akerman,* for Defendant in Error.

WHITFIELD, P. J.—In an action brought against the initial carrier for damages to an interstate shipment in 1921, or a carload of oranges caused by delay in transit

and negligent handling, it was stipulated that the bill of lading issued November 29, 1921, by the defendant company was from a point in the State of Florida to New York City, New York; that "the car was delivered by defendant to Richmond, Fredericksburg & Potomac Railroad Company, its connecting carrier, at Acca, Virginia, on the 2nd day of December, 1921, at 9:00 a. m. and was by said Richmond, Fredericksburg & Potomac Railroad Company delivered to the Pennsylvania Railroad Company, its connecting carrier, on the 2nd day of December, 1921, at Potomac Yards, Virginia, at 4:05 p. m. and arrived at Pier 29, New York, December 4th, at 2:05 a. m., Winter Haven seals intact, where the same was unloaded. At 2:35 p. m., December 3, a Western Union message sent by Gentile Brothers Company was delivered to Mr. H. H. Preston at Jacksonville, Fla. Mr. Preston was at that time the agent of the Atlantic Coast Line Railroad Company and the proper person to receive such message for the company.

In the message said Gentile Bros. Company ordered the shipment in controversy and mentioned in the bill of lading issued at Winter Haven November 29, 1921, diverted to the Atlantic Brokerage Company, in Boston, Mass. These instructions were promptly transmitted to F. L. March, agent of the Pennsylvania Railroad Company at New York, and that said wire was delivered at the office of the said F. L. Marsh on the same afternoon.

At the time of the receipt of said message all the clerks had left the office and no action was taken on shipment by Pa. Ry. on December 5th. On December 6th it was reloaded in Pa. car No. 105090, which was then floated across the river, taken to Greenville, where it was re-iced and again floated across the river and delivered to N. Y. N. H. & Hartford, and forwarded to Boston. Delivery to N. Y. N. H. & Hartford was made December 7, and it arrived in Boston

and was placed for delivery in the early morning of December 10.''

The bill of lading contained the following provision: ''No carrier shall be responsible for any loss or damage resulting directly or indirectly from change of route or destination made under the provisions of this contract.''

The court directed a verdict for the defendant which was rendered and judgment thereon was entered for the defendant. Plaintiff took writ of error.

This being an interstate shipment it was controlled by the Federal Statute which makes the initial carrier liable for any loss, damage or injury to shipments ''transported on a through bill of lading'' issued by the initial carrier. In this case the injury was not done during the transportation on the ''through bill of lading,'' issued by the defendant initial carrier; but the injury occurred during a further transit after a reconsignment by the shipper. The order of reconsignment was transmitted through the defendant initial carrier but there was no delay, fault or negligence of the defendant initial carrier in transmitting the order for reconsignment of the shipment to a point beyond the destination stated in the through bill of lading issued to the plaintiff by the defendant initial carrier. The bill of lading contained no provision for reconsignment as in Starks v. Mich. C. R. Co. 207 Ill. App. 333; and the undertaking of the defendant initial carrier under the Federal statute before the amendment of July 3, 1926, did not impose liability for loss, damage or injury to interstate shipments after they are reconsigned and are in transit to points beyond the destination stated in the bill of lading issued by the initial carrier, where the bill of lading does not provide for reconsignment and the fault of the initial carrier does not proximately contribute to the injury sustained.

See Chase & Co. v. Florida East Coast Ry. Co. 94 Fla. 1143, 115 So. R. 825; Clark v. L. & N. Ry. Co., (Ala.) 114 So. R. 295; Parker Bell L. Co. v. G. N. R. Co., 69 Wash. 123, 124 Pac. R. 389, 41 L. R. A. (N. S.) 1065; Pere Marquette R. Co. v. French, 254 U. S. 538, 41 Sup. Ct. R. 195, 65 Law Ed. 391; 1 Roberts Fed. Liability of Carrier, sec. 346.

The amendment of July 3, 1926 to the Federal statute provides that the liability imposed upon the initial carrier of interstate shipments "shall also apply in the case of property reconsigned or diverted in accordance with applicable tariffs filed as in this Act provided." 4 Mason's United States Code, page 300 Pamphlet quarterly July 1927. This statutory provision is not applicable here since the shipment was in 1921. The mere fact that the order to ship to Boston, Mass., was transmitted to the terminal carrier at New York throught the initial carrier does not render the initial carrier liable for loss, damage or injury to the shipment after the reconsignment from the original destination, the initial carrier not being at fault in transmitting the order or otherwise contributing to the injury sustained.

Affirmed.

TERRELL, AND BUFORD, J. J., concur.

ELLIS, C. J. AND STRUM AND BROWN, J. J., concur in the opinion and judgment.